2002 WY 109

Robert E. JUDGE, Appellant (Petitioner),

v.

DEPARTMENT OF EMPLOYMENT, UN-EMPLOYMENT INSURANCE COMMISSION, Appellee (Respondent).

No. 01–121.

Supreme Court of Wyoming.

July 15, 2002.

Representing Appellant: Donald L. Painter of Casper, Wyoming.

Representing Appellee: Hoke MacMillan, Attorney General; John W. Renneisen, Deputy Attorney General; and Joe Scott, Senior Assistant Attorney General.

\* Chief Justice at time of expedited conference.

Before HILL, C.J., and GOLDEN, LEHMAN \*, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1]   Appellant, Robert E. Judge (Judge), challenges a determination made by the Department of Employment, Unemployment Insurance Commission (Commission), that disqualified him from receipt of benefits for a 52–week period because he knowingly filed a claim that contained a false statement or misrepresentation of a material fact.

[¶ 2]   We will affirm.

### ISSUE

[¶ 3]   Judge broaches this issue:

Whether, contrary to Wyo. Stat. § 27–3–311(e), [Judge] knowingly filed a claim for benefits which contained a false statement or misrepresentation of a material fact as determined by the [Commission].

The Commission expresses the issue somewhat differently:

Whether the Unemployment Insurance Commission's findings that Robert E. Judge worked and received pay during weeks for which he knowingly filed claims representing that he had not, are supported by substantial evidence.

### FACTS

[¶ 4]   On June 20, 2000, Judge filed a claim with the Unemployment Insurance Division (Division) for unemployment compensation benefits that covered the weeks of June 4–10, 2000, and June 11–17, 2000.   In that application,[1] he answered the questions asked of him as follows:

| | | |
|---|---|---|
| 1. Did you work during this week?  If yes, complete section 1. | | NO |
| 2. Were you able and available for work ... ? | | YES |
| 3. Did you actively seek work?  .... | | YES |
| 4. Did you refuse any job offers or job referrals during this week?  If YES, complete section 3. | | NO |

1.   In addition, Judge submitted claims for the time period between June 18, 2000, and August 26, 2000, wherein he supplied the same answers.

5. Have you returned to work full-time? That is, did you work more than 35 hours? If YES, complete section 4.   NO

6. Did you receive holiday, vacation, severance, self-employment, social security, retirement or any other type of pay this week? If YES, complete section 2.   NO

Each claim form concludes with the following admonition above the signature line: "I certify that all statements on this claim are true to the best of my knowledge. I am not receiving benefits from any other state. I know that the law provides penalties for false statements."

[¶ 5] During the time period for which these claims were submitted, Judge was "working"[2] for High Mountain Welding and Manufacturing (HMWM). The explanation Judge used to justify his answers was that he was not "working for wages"[3] during

2. The word "work" is not defined by the statutes or applicable rules and regulations, and we will accord it its usual meaning given the context: "[T]he labor, task or duty that affords one his customary means of livelihood." Webster's Third New International Dictionary 2634 (1986). We note that, in context, "work" means much the same thing as "employment," and employment is defined by Wyo. Stat. Ann. § 27–3–104 (LexisNexis 2001), though it takes a bit more reading than just consulting a dictionary to get to the bottom of it:

§ 27–3–104. "Employment" defined; generally; exceptions.

(a) As used in this act, "employment" means service:

(i) Performed by an employee defined under 26 U.S.C. § 3306(i) including service in interstate commerce, except 26 U.S.C. § 3121(d)(2) does not apply;

(ii) Subject to any federal tax against which credit may be taken for contribution payments into any state unemployment fund;

(iii) Required to be employment under this act as a condition for full tax credit against the tax imposed by 26 U.S.C. § 3301 through 3311; and

(iv) Otherwise specified under W.S. 27–3–104 through 27–3–108.

(b) An individual who performs service for wages is an employee for purposes of this act unless it is shown that the individual:

(i) Is free from control or direction over the details of the performance of services by contract and by fact;

(ii) Repealed by Laws 1991, ch. 153, § 1.

(iii) and (iv) Repealed by Laws 1995, ch. 121, § 3.

(v) Represents his services to the public as a self-employed individual or an independent contractor; and

(vi) May substitute another individual to perform his services.

3. "Wage" is defined by Wyo. Stat. Ann. § 27–3–102(a)(xviii) (LexisNexis 2001):

§ 23–3–102. Definitions generally.

. . . .

(xviii) "Wage" means remuneration payable for services from any source including commissions, bonuses and cash. The reasonable cash value of remuneration other than cash or check shall be prescribed by rule of the commission. To the extent the following are not considered wages under 26 U.S.C. [§§ ]3301 through 3311, "wage" does not include:

(A) For purposes of W.S. 27–3–503 through 27–3–509, remuneration greater than fifty-five percent (55%) of the statewide average annual wage calculated pursuant to W.S. 27–3–303(a) and rounded to the lowest one hundred dollars ($100.00), which is paid during any calendar year to an individual by each employer or a predecessor within any calendar year including employment under any other state unemployment compensation law unless the amount is subject to a federal tax against which credit may be taken for contributions paid into any state unemployment fund;

(B) Any premium paid by an employing unit under a plan, system or into a fund for insurance or annuities to provide an employee or class of employees retirement, sickness or accident disability, medical and hospitalization expenses for sickness or accident disability or death benefits if the employee cannot receive any part of this payment instead of the death benefit or any part of the premium if the benefit is insured and cannot assign or receive cash instead of the benefit upon withdrawal from or termination of the plan, system, policy or services with the employing unit;

(C) A payment by an employing unit not deducted from an employee's remuneration for the tax imposed under 26 U.S.C. § 3101;

(D) Dismissal payments which the employing unit is not obligated to make;

(E) That portion of tips or gratuities not reportable under 26 U.S.C. § 3306(s);

(F) The value of any meals or lodging furnished by and for the convenience of the employer to the employee if the meals are furnished on the business premises of the employer or in the case of lodging, the employee is required to accept lodging on the business premises of his employer as a condition of his employment;

(G) Remuneration received by an employee as sick pay following a six (6) month continuous period of illness;

(H) Any benefit under a cafeteria plan specified by 26 U.S.C. § 125, excluding cash;

(J) Wages of a deceased worker paid to a beneficiary or estate following the calendar year of the worker's death;

the time period at issue in this case; rather, he had merely "donated" his time to a corporation he owned, and that he had "rented" welding equipment to HMWM, which he then operated for "free." Judge also asserted that he was always available for "work," because HMWM understood that if Judge found other "work," he would quit providing services to HMWM. Payments for the "work" Judge performed for HMWM were made to Sheridan Corporation, a corporation owned and operated by Judge and his wife but which had no employees. Judge was disqualified from receiving unemployment compensation benefits for a 52–week period beginning June 4, 2000, on the basis that his claim contained a false statement or misrepresentation of a material fact.[4]

[¶ 6] Wyo. Stat. Ann. § 27–3–311(e) (LexisNexis 2001)[5] provides:

> (K) Services received under any dependent care assistance program to the extent excluded from gross income under 26 U.S.C. § 129;
> (M) Wages paid to a disabled worker during the year in which he became entitled to disability insurance benefits under the Social Security Act;
> (N) Services or benefits received under any educational assistance program;
> (O) Any benefit or other value received under an employee achievement award;
> (P) The value of any qualified group legal services plan to the extent payments are excluded from gross income under 26 U.S.C. § 120;
> (Q) Costs of group term life insurance;
> (R) Any loan repayment which is repaid at interest rates below established market rates;
> (S) Any moving expenses;
> (T) Employer contributions to any qualified retirement and pension plan or individual retirement account and distributions from qualified retirement and pension plans and annuities under 26 U.S.C. § 403(b);
> (U) Benefit payments under any supplemental unemployment compensation plan; and
> (W) Any benefits paid under the Wyoming Worker's Compensation Act or any other worker's compensation law of another state.

4. The document memorializing this action does not appear in the record.

5. This statute has a parallel criminal component:
> **§ 27–3–702. Obtaining benefits by fraud; disqualification of benefits; penalties.**
> (a) No person shall, for himself or any other person, knowingly make a false statement or misrepresentation or knowingly fail to disclose

(e) Any person who knowingly files a claim for benefits which contains a false statement or misrepresentation of a material fact, as determined by the department, shall be disqualified from receiving benefits for a fifty-two (52) week period beginning the week in which the false statement or misrepresentation was made or the date that notice of the overpayment determination or decision is mailed to the person who filed the claim.

[¶ 7] Judge indicated to the Division that he wanted to appeal his disqualification from receiving benefits.[6] A hearing on the appeal was held on December 26, 2000. It was agreed that all parties had notice of the hearing.[7] The only issue that was to be considered at the hearing was "whether or not Mr. Robert Judge knowingly filed a claim for benefits which contained a false state-

> a material fact to obtain or increase benefits or other payments under this act or other state or federal law. Any person violating this section is guilty of:
> (i) A misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00), imprisonment for not more than ninety (90) days, or both, if the amount of benefits obtained in violation of this section is less than five hundred dollars ($500.00); or
> (ii) A felony punishable by imprisonment for not more than five (5) years, a fine of not more than five thousand dollars ($5,000.00), or both, if the amount of benefits obtained under fraud is five hundred dollars ($500.00) or greater.
> (b) Upon conviction the court shall require the defendant to make restitution to the department in the amount of benefits or other payments improperly paid due to the defendant's fraud. Each false statement, misrepresentation or failure to disclose a material fact is a separate offense. This section shall not preclude prosecution under any other applicable law.
> (c) In addition to the penalties provided by this section, a person convicted under this section or any other applicable law shall be disqualified from receiving benefits in any week beginning within a two (2) year period immediately following conviction.
> Wyo. Stat. Ann. § 27–3–702 (LexisNexis 2001).

6. The document memorializing this action does not appear in the record.

7. The document used to provide notice does not appear in the record.

ment or misrepresentation of a material fact." The proceedings before the Division's Appeals Examiner in this matter were informal, and the procedures used were well explained to all participants. It is clear that the burden of proof was on the Division.

[¶ 8] It was evident from the outset of the hearing that the Division had received information from HMWM that Judge had worked for it during the period of time for which he claimed unemployment benefits. Steve Badgett (Badgett), the owner of HMWM, testified at the hearing that Judge worked for him during that time period. Badgett also testified that he did not rent equipment from Judge and that, although Judge asked that the remuneration paid to him be designated as "equipment rental," he refused to do that after Badgett's bookkeeper told him he had to designate it as "contract labor." Further, Badgett's testimony indicated that Judge was paid by the hour for his work, and Badgett viewed the payments he made to Judge as wages. However, Badgett had to concede that the time cards showing the numbers of hours Judge worked had the name Sheridan Corporation on them and the notation, "equipment rental." Judge did not fill out a W–4 for his employment, nor was he covered by worker's compensation or unemployment compensation.

[¶ 9] Judge testified that he did not work for Badgett for wages, but that he donated his working time to his corporation and only charged Badgett for the rental value of the equipment used in performing the work (he emphasized that, although his corporation rented the equipment to Badgett, no one was permitted to operate it except Judge himself). Judge contended that Badgett was confused because "he doesn't realize we are two different entities." Judge testified that he filed for unemployment for the time he worked for Badgett because he was "donating" his time and, thus, he "wasn't employed." Judge was asked if he understood the reporting requirements pertinent to unemployment insurance claims. He answered thus:

> JUDGE: Well, I know that if I received any money I would have to claim it, but any money received by Sheridan Corpora-

tion wouldn't be money that I made, unless Sheridan Corporation paid me money, and Sheridan Corporation couldn't afford to pay me, and so I didn't get anything.

> VINCENT [Appeals Examiner]: Did you receive any money from Sheridan Corporation during this time?

> JUDGE: Sheridan Corporation purchased welding equipment from me, along with purchasing other welding equipment, including new equipment, including a new portable welder. And those would all be in the accounting sheets under fixed assets.

> . . . .

> JUDGE: Well, I just wanted to say that Sheridan Corporation does not have any employees, and a corporation does not have to pay its officers. And, uh, so if I'm doing things for Sheridan Corporation and the company can't pay me, I don't get paid. But, I have an interest in Sheridan Corporation, and then also that on the uh, time sheets, where it says uh, number one, and it says did you work during this week. I took that to mean did you work for wages this week. And since I didn't work for wages, I didn't think that was a uh, misrepresentation to put down that I did not earn any wages.

> . . . .

> JUDGE: OK then, then the other thing I would like to tell is that I add to my case here, is that Mr. Badgett, I asked him almost weekly to produce a W4 and hire me, and the reason for that is, in that line of work um, if you guys know anything about the welding field, a person should make sure they're covered by Workers' Compensation insurance at the least, and of course it good to have the uh, um, unemployment insurance, and so a person does not have to accept employment without that if, if, if, they, and I can't see why the State would, would require someone to accept employment without, from a corporation without a W4. So I was insisting on that, and when, every time that the subject come up, I told him I would like to do a W4, and be hired, and he would not hire me, so I never was employed, even though I kept asking to be employed.

[¶ 10] On January 8, 2001, the Appeals Examiner issued his findings that Judge had worked during the relevant time period and was aware of his obligation to provide "true information" when submitting his claim for benefits. The Examiner also found that Judge had worked and earned wages and, thus, had submitted a claim containing a false statement or misrepresentation of a material fact.

[¶ 11] Judge was entitled to appeal the above-described determination to the Unemployment Insurance Commission and he did so. 3 Weil's Code of Wyoming Rules, Department of Employment, Unemployment Insurance Division, Chapter 30, Section 7, 025 050 001–12 (2001). On March 21, 2001, the Commission affirmed Judge's disqualification from benefits. Judge then filed a petition for review in the district court pursuant to W.R.A.P. 12. By order entered on June 1, 2001, the matter was certified to this Court under W.R.A.P. 12.09(b)(1),(3), and (6).[8]

### STANDARD OF REVIEW

[¶ 12] In synthesizing the standard of review for a case such as this, we must look beyond the usual formula found in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001), though that statute is a part of the mix. First, we note the standard of review we articulated in *Wyoming Department of Employment v. Porter,* 986 P.2d 148, 150 (Wyo.1999):

Review of the Commission's decision proceeds as if the matter had come directly to us, and we afford no special deference to the district court's determinations. *Wyoming Department of Employment, Division of Unemployment Insurance v. Banks,* 854 P.2d 709, 711 (Wyo.1993). The Wyoming Administrative Procedure Act defines and limits our authority in review of administrative decision-making:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. § 16–3–114(c) (1990).

*Gibson v. Wyoming Division of Unemployment Insurance,* 907 P.2d 1306, 1309 (Wyo.1995). "We will affirm an agency's legal conclusion only if it is in accordance with the law." *Haynes v. State ex rel. Wyoming Workers' Compensation Division,* 962 P.2d 876, 878 (Wyo.1998).

[¶ 13] We include with that, this guideline quoted from *Hat Six Homes v. Department of Employment,* 6 P.3d 1287, 1291 (Wyo.2000):

In reviewing unemployment benefit cases, we have said:

The standard of review of an agency determination is well-established. Unemployment benefit cases involving contended misconduct normally present mixed questions of law and fact. *Henson v. Employment Sec. Dept. of State,* 113 Wash.2d 374, 779 P.2d 715 (1989).

---

**8.** Judge's brief was not filed in this Court until November 6, 2001, because of extensions of time sought by him, and granted by this Court.

*See generally Natrona County School Dist. No. 1 v. McKnight,* 764 P.2d 1039 (Wyo.1988). A reviewing court is "confined to the matters explicitly referenced in W.S. 16–3–114(c) and W.R.A.P. 12.09." *Cook v. Zoning Bd. of Adjustment for the City of Laramie,* 776 P.2d 181, 184 (Wyo.1989).

> "On appeal from a district court's consideration of an agency action, this court is not bound by the conclusions of the reviewing court. Rather, using the same evidentiary materials and the same review standards as the district court, we conduct an independent inquiry into the matter, just as if it had proceeded directly to us from the agency."

*Southwest Wyoming Rehabilitation Center v. Emp. Sec. Com'n of Wyoming,* 781 P.2d 918, 920 (Wyo.1989). (*Accord Employment Sec. Com'n of Wyoming v. Bryant,* 704 P.2d 1311, 1314 (Wyo.1985) and *Matter of North Laramie Land Co.,* 605 P.2d 367, 373 (Wyo.1980).) Our deference for findings of fact is reserved for the fact-finder which, in this case, is ESC. *Department of Revenue and Taxation of State of Wyoming v. Casper Legion Baseball Club, Inc.,* 767 P.2d 608 (Wyo.1989). *See Zezas Ranch, Inc. v. Board of Control,* 714 P.2d 759, 764 (Wyo.1986).

*Western Gas Processors, Ltd.,* 786 P.2d at 870 (footnote omitted).

We review an agency's findings of fact by applying the substantial evidence standard. *DeWall v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 960 P.2d 502, 503 (Wyo. 1998). This Court examines the entire record to determine whether substantial evidence supports the agency's findings. *Id.* Substantial evidence is relevant evidence which a reasonable mind may accept in support of an agency's conclusions. *Id.* We will not substitute our judgment for that of the agency when substantial evidence supports its decision. *Id.* We do not, however, grant the same deference to an agency's conclu-

sions of law. *Nelson v. Sheridan Manor,* 939 P.2d 252, 255 (Wyo.1997). We affirm an agency's conclusions of law when they are in accordance with law. *Corman v. State ex rel. Wyoming Workers' Compensation Division,* 909 P.2d 966, 970 (Wyo.1996). Unemployment benefit cases which involve the contention that an employee was discharged for misconduct connected with his work normally present mixed questions of law and fact. *Wyoming Department of Employment, Division of Unemployment Insurance v. Rissler & McMurry Company,* 837 P.2d 686, 688 (Wyo.1992); *Employment Security Commission of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866, 870 (Wyo.1990).

*SF Phosphates, Ltd.,* 976 P.2d at 201.

[¶ 14] Finally, we must also include this principle in our review:

> Provisions of an unemployment compensation statute imposing disqualifications for the benefits available thereunder should be strictly construed in favor of the claimant. This rule is a corollary to the rule requiring generally liberal interpretation of such statutes as a whole so that they may achieve their benign purpose. A disqualifying provision should not be enlarged by implication or by adding to one such provision words found only in another.

76 Am.Jur.2d, *Unemployment Compensation* § 14 (1992), *Johnides v. St. Lawrence Hospital,* 184 Mich.App. 172, 457 N.W.2d 123, 125 (1990), *Ress v. Abbott Northwestern Hospital, Inc.,* 448 N.W.2d 519, 523 (Minn.1989), *Armstrong v. Neel,* 725 S.W.2d 953, 955 (Tenn.App.1986), and *see Unemployment Compensation Commission v. Renner,* 59 Wyo. 437, 143 P.2d 181, 189 (1943).

## DISCUSSION

[¶ 15] The Wyoming Employment Security Law [9] is designed to provide a form of unemployment insurance so that workers who become unemployed may receive benefits under the provisions of that act. The preprinted form used for submitting an appli-

---

9. Wyo. Stat. Ann. § 27–3–101 (LexisNexis 2001).

cation for benefits is worded in terms that are simple, direct, and easily understood. When asked the question, did you work? Judge answered, "No," although no stretch of the meaning of the word "work" could permit him to give such an answer, without risk of being accused of making a false statement or a misrepresentation of the fact that was the most significant bit of information in his application. His own testimony is that he did work. The preprinted form provided Judge with ample opportunity to explain his theory of his claim, without the need to resort to falsity. We conclude that substantial evidence, as set out more fully above, supports the Commission's decision to disqualify Judge from benefits. *See Gipson v. Iowa Department of Job Service,* 315 N.W.2d 834, 837–38 (Iowa App.1981), *Whitney v. Board of Review of Industrial Commission of Utah,* 585 P.2d 780, 781–82 (Utah 1978), and *see generally,* John C. Williams, Annotation, *Criminal Liability for Wrongfully Obtaining Unemployment Benefits,* 80 A.L.R.3d 1280, esp. § 7 (1977).

[¶ 16] Moreover, Judge clearly misapprehended the interaction of the law, which governs the operation of corporations, the law pertinent to federal corporate and individual taxation, and the law applicable to unemployment benefits. That misapprehension may have been grounded in part in ignorance, but as is almost universally true, ignorance of the law is no defense. *See Gaudina v. Haberman,* 644 P.2d 159, 166 (Wyo.1982).

[¶ 17] For these reasons, the decision of the Commission is affirmed.